UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LINDA GRUBBS, *et al.*,                              Case No. 1:13-cv-246
      Plaintiffs,

                                           Dlott, J.
v.                                                  Litkovitz, M.J.

SHEAKLEY GROUP, INC., *et al.*,                     **REPORT AND**
      Defendants.                            **RECOMMENDATION**

      This matter is before the Court on plaintiffs' motion for leave to file a first amended

complaint (Doc. 54), defendants' responses in opposition (Docs. 55, 56, 57, and 66), and

plaintiff's reply memoranda.  (Docs. 71, 72).

## I.  Background and Procedural History

      Plaintiffs Linda Grubbs, Tri-Serve, LTD, Tri-Serve #1, LLC, Tri-Serve #2, LLC, Tri-

Serve #3, LLC, and Capital Concepts, Inc. (plaintiffs) bring this action under the Racketeer

Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, against defendants

Sheakley Group, Inc., Sheakley Benefit Plans Agency, Inc., Sheakley HR, LLC, Sheakley

Medical Management Resources, LLC, Sheakley Enterprises, LLC, Sheakley Resolution

Systems, LLC, Sheakley Retirement Plans, LLC FBT Ohio, Inc., Matt Sheakley, Larry Sheakley,

Steve Wolf, Bryan Bundy, Maureen Surkamp, Ken Weber, Susan Fernbach, Kimberly Martin,

Heather Fair, Thomas E. Pappas, Jr., Pay Systems of America, Inc. d/b/a Sheakley Pension

Administration (the Sheakley defendants), Angelia Strunk-Zwick, James Dean Allen, Rodger

Roeser, Eisen Agency, Frost Brown Todd LLC, First Financial Bancorp, U.S. Bancorp, and John

and Jane Does 1-10.  In their 109-page, 984-paragraph verified complaint, plaintiffs raise the

following federal claims: unfair competition under 15 U.S.C. § 1125(a) against the Sheakley

defendants and Eisen Agency; a RICO claim against Angelia Strunk-Zwick and the Sheakley

defendants; and Lanham Act claims under 15 U.S.C. §§ 1114 and 1125(a) against Angelia

Strunk-Zwick, Eisen Agency, and the Sheakley defendants. Plaintiff also raises state law claims

for breach of contract against defendants Angelia Strunk-Zwick, Kimberly Martin, Susan

Fernbach, and the Sheakley defendants; a civil conspiracy claim against the Sheakley defendants,

Angelia Strunk-Zwick, Susan Fernbach, Kimberly Martin, and Frost Brown Todd, LLC; a

fraudulent scheme claim against Angelia Strunk-Zwick, James Allen Dean, US Bank, and First

Financial Bancorp; a negligence claim against US Bank and First Financial Bancorp; breach of

the covenant of good faith and fair dealing against US Bank and First Financial Bancorp;

violation of the Ohio Deceptive Trade Practices Act against all defendants except First Financial

Bancorp, US Bancorp, Frost Brown Todd, LLC, and James Allen Dean; a claim of

misappropriate of trade secrets against the Sheakley defendants, Eisen Agency, Angelia Strunk-

Zwick, Kimberly Martin, and Susan Fernbach; and claims of fraud, tortious interference with

business relations, tortious interference with contracts, unjust enrichment, spoliation of evidence,

conversion, and breach of fiduciary duty against all defendants.

     Plaintiffs filed their original complaint on April 15, 2013. (Doc. 1). Subsequently, all

defendants except for James Dean Allen and the Doe defendants filed motions to dismiss. *See*

Docs. 17, 21, 25, 26, 35, 58. On September 17, 2013, plaintiffs filed the instant motion to amend

their complaint, seeking to: (1) join additional defendants; (2) dismiss the claims of plaintiffs

Tri-Serve #2, LLC and Tri-Serve #3, LLC; (3) dismiss as defendants U.S. Bancorp and First

Financial Bancorp and substitute in their place, respectively, their wholly-owned subsidiary

banks U.S. Bank National Association and First Financial Bank National Association;[1] (4) refine

---

[1]For purposes of clarity, the Court will hereinafter refer to these parties as U.S. Bank and First Financial
Bank.

its claim against First Financial Bank; (5) dismiss all claims against the bank defendants arising

under the Ohio Uniform Commercial Code; (5) dismiss all claims against Frost Brown Todd,

LLC except for the unjust enrichment claim; (6) limit their breach of fiduciary and breach of

contract claims to defendants Angelia Strunk-Zwick, Susan Fernbach, Heather Martin, and

proposed new defendant Sheakley-UniService, Inc.; (7) include additional factual allegations in

support of their RICO claim; (8) limit their fraud claims to defendant Angelia Strunk-Zwick and

include additional supporting allegations; (9) include new defendant Sheakley-UniService, Inc.

in their misappropriation of trade secret claim; (10) include an aiding and abetting claim (Count

XII) and unjust enrichment (Count XX) against First Financial Bank; (11) limit their Lanham

Act and unfair competition claims to defendant Angelia Strunk-Zwick and the Sheakley

defendants that are not natural citizens; (12) limit their state law conversion, tortious

interference, civil conspiracy claims to defendants Angelia Strunk-Zwick, Susan Fernbach,

Heather Martin, and the Sheakley defendants and limit their and unjust enrichment claim (Count

XVIII) to Angelia Strunk-Zwick and the Sheakley defendants; and (13) defer on their spoliation

of evidence claim. (Doc. 54, Ex. 1 at 5-7). No scheduling order has been set in this matter.

## II. Legal Standard

The granting or denial of a motion to amend pursuant to Fed. R. Civ. P. 15(a) is within

the discretion of the trial court. Leave to amend a complaint should be liberally granted. *Foman*

*v. Davis*, 371 U.S. 178 (1962). The Court should consider factors such as undue delay, bad faith

or dilatory motive on the part of the movant, the repeated failure to cure deficiencies by

amendments previously allowed, lack of notice to the opposing party, undue prejudice to the

opposing party by virtue of allowance of the amendment, and futility of amendment. *Id. See*

*also Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe*

*v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998); *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).

   **III. Analysis**

   Plaintiffs seek leave to amend their complaint, as discussed above, and maintain that their motion to amend should be granted because: (1) amendment would not prejudice any party given the early stage of this case; (2) the claims pertaining to the proposed new defendants arise from the same nucleus of facts alleged in the original complaint; and (3) they seek to cure purported pleading deficiencies in their original complaint by including additional factual allegations in their proposed amended complaint. (Doc. 54, Ex. 1).

   The Sheakley defendants oppose plaintiffs' motion to amend as they claim plaintiffs "seek to place an unreasonable burden on the Court and the parties" by filing a 160-page, 1012-paragraph amended complaint. (Doc. 55 at 1). The Sheakley defendants further assert that plaintiffs have not provided a sufficient comparison to the original complaint such that the Court and parties are aware of the difference between the two. These defendants contend that this is the type of exceptional case where the Court should not adhere to the liberal standard enunciated by Fed. R. Civ. P. 15(a) for permitting amendment, maintaining that plaintiffs proposed amended complaint was drafted in bad faith; plaintiff's undue delay in seeking to amend evinces a dilatory motive; and the amendment would be futile. Further, the Sheakley plaintiffs assert that plaintiffs' counsel, Eric Deters, has made improper statements to and about various defendants through communications and social media. (Doc. 55).

   Defendant First Financial Bank opposes the motion to amend on the basis of futility. First Financial Bank argues that plaintiffs fail to allege sufficient facts supporting their claims against it such that the proposed amended complaint would not survive a Fed. R. Civ. P. 12(b)(6)

challenge. (Doc. 56). First Financial Bank specifies that plaintiffs have asserted an "aiding and abetting" claim against it (Doc. 54, Ex. 3 at 126), but that there is no such claim recognized under Ohio law. Further, First Financial Bank asserts that plaintiffs have failed to allege facts supporting their claim of unjust enrichment against it. First Financial Bank also contends that the motion to amend must be denied because plaintiffs have not demonstrated that the new allegations were unknown to them at the time of the filing the original complaint and because permitting amendment would prejudice First Financial Bank by protracting this litigation. (Doc. 56).

Defendant U.S. Bank opposes the proposed amendment asserting: the pleading is burdensome; plaintiffs acted in bad faith and were dilatory in seeking the amendment; and amendment would be futile as the proposed amended complaint fails to state a claim and should be dismissed under Fed. R. Civ. P. 12(b)(6). U.S. Bank further contends that allowing the amendment would be prejudicial given the length of the proposed amended complaint and plaintiffs' failure to sufficiently indicate how the complaint as amended differs from the original – such as by providing a "red-lined" document notating the changes. (Doc. 57 at 6). Further, U.S. Bank relies on the brief in opposition filed by the Sheakley defendants to demonstrate that plaintiffs' counsel Eric Deters is litigating this matter in bad faith. (*Id.*, n.2).

Defendant Angelia Strunk-Zwick, proceeding pro se, opposes the proposed amendment, asserting that it is untimely and fails to state a claim for relief. Defendant Strunk-Zwick incorporates the arguments made by the Sheakley defendants (Doc. 55) in their opposition brief. (Doc. 66).

For the following reasons, plaintiffs' motion to amend the complaint is granted in part and denied in part.

A. <u>Timeliness</u>

As noted above, there is no calendar order in place in this matter and, therefore, the Court has not designated a deadline for amending the pleadings. Plaintiffs' motion to amend was not filed out of time pursuant to any Court-ordered schedule. *See Schulte v. Ford Motor Co.*, No. C-1-08-758, 2009 WL 1935926, at *2 (S.D. Ohio June 25, 2009) (Weber, J.) (finding timely a motion to amend a pleading filed on the last date permissible by the scheduling order). Thus, plaintiffs' motion is not clearly untimely.

To the extent defendants assert plaintiffs were dilatory in seeking leave to amend the complaint by filing their motion after the motions to dismiss had been fully briefed, the Court does not find that this, alone, serves as a basis for denying plaintiffs' motion. Plaintiffs assert that the complex nature of this case required them to engage in discovery to identify the proper corporate defendants and that additional time was necessary to plead their claims with the requisite specificity to cure any purported pleading deficiencies asserted by defendants. (Doc. 72 at 3-4). The undersigned acknowledges that plaintiffs motion to amend was filed after the briefing was complete of several pending motions to dismiss; however, this is not an unusual practice. *See, e.g., Perkins v. Rieser*, No. 3:07-cv-325, 2012 WL 440721, at *2 (S.D. Ohio Feb. 10, 2012) (allowing amendment after full briefing on motion to dismiss where amendment sought to cure purported pleading deficiencies identified by defendants). *See also U.S. ex rel. American textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 550-51 (S.D. Ohio 1998) (noting that motion to amend was dilatory when filed after court granted motion dismiss but noting that motion would have been timely if filed after full briefing on dismissal motion but before ruling was entered).[2]

---

[2]The Court in *The Limited* matter appeared to ratify the practice of filing motions to amend after complete briefings on motions to dismiss as the latter would inform the amending party of potential pleading deficiencies. *Id.*

The undersigned further notes that "[d]elay by itself is not a sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (quoting *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). As discussed further below, the undersigned finds that the defendants will not be unduly prejudiced by allowing plaintiffs to amend their complaint.   Accordingly, the Court finds that plaintiffs were not dilatory in seeking to amend their complaint and the motion to amend was timely filed.

   B. Bad Faith

   The Sheakley defendants assert plaintiffs are acting in bad faith in seeking to amend the complaint and claim that plaintiffs' intent is to harass and intimidate defendants.  As an example, the Sheakley defendants cite to plaintiffs' demand for money damages in the amount of $1 billion, which plaintiff herself has conceded is a ridiculous request; statements made by plaintiffs' counsel Eric Deters to defendants Larry Sheakley and Angelia Strunk-Zwick; Facebook posts from Mr. Deters; and purportedly inflammatory language in both the original and proposed amended complaints.  Doc. 55 at 3-7.  Defendants U.S. Bank and Angelia Strunk-Zwick make similar arguments in their briefs in opposition.  *See* Doc. 57 at 6-7; Doc. 66.

   Plaintiffs respond that they are acting in good faith:

   While plaintiff's (sic) counsel's communications with and about the defendant Struck-Zwick, and defendant Larry Sheakley are outside the realm of usual communications by legal professionals. . . . [p]laintiff's counsel's zeal in pursuing this case is beyond that which is seen in plaintiff's attorneys commonly, but it is evidence of zeal only.

(Doc. 71 at 2; Doc. 72 at 3).

While the undersigned finds questionable the propriety of plaintiffs' ongoing request for $1 billion in damages in the face of her testimony that such a demand is "ridiculous," *see* Doc. 55, Ex. 1 at 13, ln. 11-20, and Mr. Deters' conduct,[3] these matters do not speak to whether plaintiffs have acted in bad faith in seeking to amend their complaint. Insofar as defendants assert plaintiffs seek to gain a tactical advantage through amending the complaint (Doc. 55 at 3, 7 and Doc. 57 at 5, 7, citing *Oneida Indian Nation v. Cty. of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000)), they fail to explain what tactical advantage plaintiffs seek to gain.[4] This matter is in the early stages of litigation and this is plaintiffs' first request to amend the complaint. *Cf. Indus. Assets, Inc. v. Capital Equipment Sales Co., Inc.*, 116 F.3d 1480, 1997 WL 359061, at *4-5 (6th Cir. 1997) (affirming district court's denial of plaintiff's second motion to amend the complaint where it was filed at the summary judgment stage, after plaintiff had already amended complaint once, and where amendment sought could have been raised earlier); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) (bad faith exists where plaintiffs motion to amend was obvious attempt to avoid summary judgment). Although defendants' motions to dismiss are ripe, allowing plaintiffs to amend would not require defendants to alter their litigation strategy as the amended complaint involves similar factual and legal issues and discovery has not yet commenced. *See Grant v. Target Corp.*, 281 F.R.D. 299, 304 (S.D. Ohio 2012) (permitting amendment at summary judgment stage where amendments would not have required defendant to litigate matter in substantially different manner).

Accordingly, the Court does not find that plaintiffs have acted in bad faith by seeking to amend their complaint at this juncture.

---

[3]Mr. Deters' "zealousness" is addressed further in the Court's January 9, 2014 Order. *See* Doc. 74.
[4]The New York District Court in *Oneida* found bad faith on behalf of the plaintiffs where their litigation strategy ran contrary to representations they had made for decades with regard to their interest in the defendants property. *Oneida*, 199 F.RR.D. at 80-84. Here, plaintiffs have made no such contradictory misrepresentations.

C. Prejudice

Defendants assert that permitting amendment is prejudicial for the following reasons: (1) it will protract the litigation and increase costs and attorney fees to defendants (Doc. 56 at 5); (2) the length of the proposed complaint is unduly burdensome (Doc. 55 at 3; Doc. 57 at 6-7); and (3) plaintiffs failed to sufficiently identify the differences between the original and proposed amended complaints. (Doc. 55 at 9; Doc. 57 at 7). Defendant First National Bank also argues that it would "be prejudiced if the Court allows [p]laintiffs to withdraw their original 10 claims against First Financial by amendment when they instead should be dismissed on their merits with prejudice." (Doc. 56 at 5). For the reasons stated below, the Court finds that defendants will not be unduly prejudiced by permitting the amendment.

**Cost to defendants.** First Financial Bank's argument that requiring it to continue to litigate this matter is unduly prejudicial is without merit. Though First Financial Bank "will suffer the inherent prejudice of having to defendant against [plaintiffs'] new claims[, t]his obligation to defend is not the type of undue prejudice typically considered in deciding whether to allow amendment." *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-cv-427, 2012 WL 1031411, at *3, n.3 (S.D. Ohio Mar. 27, 2012) (citing *Grant v. Target Corp.*, No. 2:10-cv-823, 2012 WL 871093, at *2-3 (S.D. Ohio Mar. 14, 2012)). Rather, prejudice is determined by considering factors such as whether allowing the amendment will require "the opponent to expend significant additional resources to conduct discovery and prepare for trial [or will] significantly delay the resolution of the dispute. . . ." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). Given the procedural posture of this matter, the undersigned finds that First Financial Bank has failed to establish that it will suffer undue prejudice – aside from the inherent costs of doing business – should plaintiffs' amendment be permitted.

**Length of the proposed amended complaint.** Both the Sheakley defendants and defendant U.S. Bank cite to *Thomas v. American Tobacco Co.*, 173 F.R.D. 546 (M.D. Ga. 1997) and *Roundtree v. Countrywide Home Loans, Inc.*, No. 3:09-cv-189, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009) to support their contention that amendment should not be allowed due to the length of the proposed pleading – 159 pages. (Doc. 55 at 11; Doc. 57 at 7). These defendants assert that the proposed amended complaint is subject to dismissal under Fed. R. Civ. P. 8 for being needlessly verbose. Defendants' argument is unavailing.

Notably, both cases cited by these defendants are out-of-Circuit and involve complaints filed by pro se plaintiffs, and in the case of *Thomas*, an inmate. Further, *Thomas* involved a 110 page handwritten complaint wherein the inmate-plaintiff asserted conspiracy claims against a tobacco company. *Thomas*, 173 F.R.D. at 546. The court dismissed the *Thomas* complaint not only for excessive verbosity, but because the plaintiff was improperly seeking relief on behalf of other individuals. *Id*. at 547. Given these distinctions, the undersigned declines to find that *Thomas* stands for the proposition that plaintiffs' motion to amend must be denied merely due to length. Defendants' reliance on *Roundtree v. Countrywide Home Loans, Inc.*, No. 3:09-cv-189, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009) is equally unavailing. *Roundtree* is distinguishable from the instant matter in light of that plaintiff's pro se status and because the Florida district court in that matter permitted plaintiff to amend his complaint to cure identified pleading deficiencies. *Id*. at * 5.

There is no bright-line rule providing that the length of a complaint, in and of itself, is a basis for dismissal or denying a motion to amend. Though Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it does not prohibit further allegations elaborating on the claims.

Moreover, the Supreme Court and Sixth Circuit have found that complaints must contain more than conclusory allegations; they must provide sufficient factual content to put the defendant on notice as to the claims against them. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013). The Court has no basis to question plaintiffs' assertions that the increased length is due to further discovery conducted and their duty to plead their fraud claims with specificity. *See* Doc. 71 at 3; Doc. 72 at 3. While the proposed amended complaint is admittedly lengthy, it "is neither confusing nor incomprehensible and generally fulfills the purposes of Rule 8 by giving [d]efendants fair notice of [p]laintiffs' claims. Because 'verbosity or length is not by itself a basis for dismissing a complaint based on rule 8(a),'" the Court finds that the length of the proposed amended complaint is not a sufficient basis for denying plaintiffs' motion. *City of Pontiac General Employees' Retirement Sys. v. Stryker Corp.*, No. 1:10-cv-520, 2011 WL 2650717, at *7 (W.D. Mich. July 6, 2011) (quoting *Hearns v. San Bernadino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008)) (listing cases).

> **Specificity of alterations.** The Sheakley defendants and defendant U.S. Bank further contend that allowing the amendment would prejudice them as plaintiffs have not sufficiently identified the differences between the original and amended complaints. These defendants contend that given the length of the pleadings, plaintiffs should have provided a log of the distinctions or a "redlined" document. (Doc. 55 at 1, 7-9; Doc. 57 at 2). Defendants' arguments are not well-taken.

Plaintiffs' motion to amend sets forth the claims raised in the original complaint and the ways in which the proposed amended complaint differs. (Doc. 54, Ex. 1 at 3-7). Plaintiffs' motion is sufficient to notify the parties and the Court as to new claims and parties and, further,

what claims plaintiffs no longer seek to pursue. Defendants cite to no authority supporting their proposition that plaintiffs must submit a log of the changes between the two pleadings. Moreover, even if such a log were included, defendants would still be required to engage in a paragraph by paragraph analysis of any amended pleading in drafting a responsive pleading.

For the above reasons, the Court finds that permitting plaintiffs to amend their complaint at this early stage in the litigation will not cause undue prejudice to defendants.

D. <u>Futility</u>

A motion to amend may be denied if allowing the proposed amendment would be futile. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* (citing *Thiokol Corp. v. Dept. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)). "The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose,* 203 F.3d at 421.

Here, defendants First Financial Bank, U.S. Bank, and the Sheakley defendants all contend that plaintiffs' motion to amend should be denied for futility because the respective claims raised against them could not withstand a Rule 12(b)(6) challenge. As each defendant raises unique arguments, the Court will address the motions separately.

1. *First Financial Bank (Doc. 56)*

Defendant First Financial Bank asserts plaintiffs' proposed claims against them – Count XII, Aiding and Abetting Fraud, and Count XX, Unjust Enrichment (Doc. 54, Ex. 3 at 126, 157-58) – would not withstand a Rule 12(b)(6) motion to dismiss. As to the aiding and abetting

claim, First Financial Bank contends this claim is not recognized under Ohio law.  (Doc. 56 at 3, citing *DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n, Inc.*, 974 N.E.2d 1194 (Ohio 2012); *Antioch C. Litigation Trust v. Morgan*, No. 3:10-cv-156, 2012 WL 6738676 (S.D. Ohio Dec. 31, 2012)).  To date, plaintiffs have not responded to First Financial Bank's arguments.[5]

In *DeVries*, the Ohio Supreme Court, upon a certified question submitted by the United States District Court for the Northern District of Ohio, held that: "[u]nder the applicable circumstances, does Ohio recognize a cause of action for tortious acts in under the Restatement (2d) of Torts, § 876?"  *Devries*, 974 N.E.2d at 1194.  Section 876 provides that a party may be liable "[f]or harm resulting to a third person from the tortious conduct of another" where the party "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."  Restatement (Second) of Torts § 876 (1979).  Without issuing an opinion, the *DeVries* court declined to recognize the cause of action under the particular circumstances of that case.  *Id*.

Before *DeVries*, the Sixth Circuit held that § 876 claims, such as plaintiffs' aiding and abetting claim against First Financial Bank, were viable given their implicit recognition by Ohio appellate courts.  *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 532-34 (6th Cir. 2000) (citing cases).  However, Ohio courts have subsequently determined, consistent with *DeVries*, that such claims are not cognizable.  *See, e.g., Wells Fargo v. Smith*, No. CA2012-04-

---

[5]Plaintiffs' proposed amended complaint includes the following allegations in support of their aiding and abetting claim against First Financial Bank: First Financial Bank had knowledge that defendant Angelia Strunk-Zwick was not permitted to be a signatory on any of plaintiffs' business accounts with First Financial Bank.  On July 3, 2009, plaintiff Linda Grubbs reiterated this to First Financial Bank and stated that defendant Angelia Strunk-Zwick should never have been given signatory authority on any of plaintiffs' account with First Financial Bank.  Accordingly, First Financial Bank was aware that permitting defendant Angelia Strunk-Zwick to exercise authority as a signatory on any of plaintiffs' accounts would constitute a breach of duty to plaintiffs.  First Financial Bank provided substantial assistance to defendant Angelia Strunk-Zwick in carrying out her tortious conduct against plaintiffs.  First Financial Bank's actions were a proximate cause of plaintiffs' damages.  (Doc. 54, Ex. 3, ¶¶ 949-53).

006, 2013 WL 938069, at *7 (Ohio Ct. App. Mar. 11, 2013); *Sacksteder v. Senney*, No. 24993,

2012 WL 4480695, at *16 (Ohio Ct. App. Sept. 28, 2012). Federal Courts in Ohio, including the

Sixth Circuit, have similarly determined that aiding and abetting claims like plaintiffs' are not

viable in light of the *DeVries* holding. *See Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d

920, 929 (6th Cir. 2013); *Parlin Fund LLC v. Citibank N.A.*, No. 1:13-cv-111, 2013 WL

3934997, at *8 (S.D. Ohio July 30, 2013); *Bash v. Textron Financial Corp.*, 483 B.R. 630, 649-

50 (2012).

Accordingly, due to *DeVries* and its progeny, the Court finds that plaintiffs aiding and

abetting claim against First Financial Bank fails to state a claim for relief as a matter of law. The

undersigned thus recommends that plaintiffs' motion to amend be denied as to Count XII

(Aiding and Abetting Strunk-Zwick's Fraud – First Financial).

Defendant First Financial Bank further argues that the motion to amend should be denied

for futility because plaintiffs fail to state a claim for unjust enrichment against it. (Doc. 56 at 4).

To state a claim for unjust enrichment under Ohio law, a complaint must allege that "1) plaintiff

conferred a benefit on defendant; 2) defendant knew of such benefit; and 3) defendant retained

the benefit under circumstances where it would be unjust to do so without payment." *Resource

Title Agency, Inc. v. Morreale Real Estate Srvs., Inc.*, 314 F. Supp.2d 763, 771 (N.D. Ohio

2004). First Financial Bank argues that plaintiffs' proposed amended complaint fails to state a

claim for unjust enrichment because it does not allege that First Financial Bank benefitted from

the conduct of any party to this litigation. (Doc. 56 at 4). Review of the proposed amendment

demonstrates otherwise.

Plaintiffs seek to include the following allegations against First Financial Bank:

Tri-Serve conferred a substantial benefit upon First Financial by, among other
things: (i) accepting cash deposits into an account maintained in its name whose

existence was wholly unauthorized, and (ii) accepting cash deposits into accounts
whose signatories were knowingly unauthorized to withdraw funds therefrom.

First Financial knew that it had been conferred a benefit by Tri-Serve.

First Financial wrongfully retained these benefits and has not reimbursed
Tri-Serve for the retention of these benefits, to the detriment of Tri-Serve.

It would be unjust for First Financial to retain the benefits conferred upon it by
Tri-Serve.

(Doc. 54, Ex. 3, ¶¶ 1015-18). The above excerpt demonstrates that plaintiffs' proposed

amendment includes allegations that plaintiff Tri-Serve conferred a benefit upon First Financial

Bank. Further, these allegations appear to comport with the pleading requirements for stating a

claim of unjust enrichment under Ohio law.

The undersigned thus finds that plaintiffs' proposed amendment is not futile regarding

their unjust enrichment claim against First Financial Bank.

2. *U.S. Bank*

Plaintiffs' proposed amended complaint includes the following claims against defendant

U.S. Bank: Fraud and Civil Conspiracy to Commit Fraud (Count XI) and Unjust Enrichment

against U.S. Bank (Count XIX). U.S. Bank asserts that the amendment should be denied for

futility because these claims could not withstand a Rule 12(b)(6) challenge. (Doc. 57 at 8-15).

Plaintiffs assert that U.S. Bank's argument presupposes legal conclusions with regard to whether

its employee, defendant James Dean Allen (Allen), was acting in the scope of his employment

while engaging in the acts alleged by plaintiffs. Plaintiffs therefore maintain they should be

permitted to amend with regard to the fraud claims at Count XI.[6] (Doc. 71 at 4-5). However,

---

[6]Though the proposed amended complaint does not signify plaintiffs' fraud claim as a fraudulent
misrepresentation claim, plaintiffs' reply in support of their motion to amend and their proposed allegations signify
that plaintiffs seek to raise a claim of fraudulent misrepresentation against U.S. Bank. *See* Doc. 54, Ex. 3, ¶¶ 941-
42; Doc. 71 at 5.

plaintiffs concede that the proposed amended complaint fails to state a claim against U.S. Bank for unjust enrichment and seeks to redact this claim. (*Id*. at 5).

To state a claim for fraudulent misrepresentation under Ohio law, a complaint must include allegations of: "(1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance." *Stuckey v. Online Resources Corp.*, 819 F. Supp.2d 673, 682 (S.D. Ohio 2011) (citing *Williams v. Aetna Fin. Co.*, 700 N.E. 859 (Ohio 1998)). U.S. Bank contends that plaintiffs' proposed claim fails because they do not allege a plausible misrepresentation by defendant Allen and, further, that defendant Allen's actions are not imputable to U.S. Bank. (Doc. 57 at 9).

Plaintiffs' proposed amended complaint includes the following allegations in connection with this claim:

> Defendant Allen maliciously conspired with his lover, Strunk-Zwick, to defraud Capital Concepts and committed overt acts aimed at furthering her fraud.
>
> As an officer and employee of U.S. Bank, Allen had been instructed by Ms. Grubbs that Strunk-Zwick was not to have signatory authority over any Capital Concepts accounts with U.S. Bank. Allen represented to Ms. Grubbs that only she would have signatory authority over any account or loan that Capital Concepts had with U.S. Bank. These representations occurred during two meetings at Capital Concepts' place of business at 9676 Dry Fork Road, Harrison, Ohio 45030.
>
> As an employee of U.S. Bank, Allen accepted a loan application that had been forged by Strunk-Zwick on or about August 7, 2007, and aided and abetted the opening of accounts with regard to SinglePoint and ACH services that were controlled by Strunk-Zwick, all being against Ms. Grubbs' instructions and directions on this matter.

Allen knowingly and intentionally exercised commercially unreasonable banking practices in accepting loan applications from Strunk-Zwick and in opening accounts.

Allen failed to act in good faith in opening of accounts with regard to SinglePoint and ACH services for Capital Concepts.

Allen knew that his lover, Strunk-Zwick, was not authorized to act on behalf of Ms. Grubbs or Capital Concepts with regard to any account or loan at U.S. Bank. Allen knew or should have known that his lover, Strunk-Zwick, had legal issues or problems arising from her ownership of Transcon and being a key employee at Innovative.

Allen conspired with Strunk-Zwick to allow her to get control over Capital Concepts' money and accounts by forgery, conversion, or wrongful transfer using fraudulent accounts or loan applications he materially assisted her in opening accounts or obtaining loans and proceeds thereof for Capital Concepts under her sole control.

Allen performed these actions in furtherance of Strunk-Zwick's forgeries, conversion, or wrongful transfers, and to the harm of Capital Concepts.

Allen performed them in his capacity as an officer of and within the scope of his employment at U.S. Bank, and both Allen and U.S. Bank benefitted from the accounts and unlawful conduct.

The actions undertaken by Allen and others at U.S. Bank were so reckless that their intent can be inferred.

U.S. Bank knew that Capital Concepts would rely upon the representations that application for loans, the withdrawal or application of loan proceeds, and control over loans and accounts would be exercised solely by Ms. Grubbs.

These representations were made at Capital Concepts' place of business at 9676 Dry Fork Road, Harrison, Ohio 45030, where the banking relationships were first discussed and agreed upon between Ms. Grubbs and Allen, and where his lover, Strunk-Zwick, worked.

Capital Concepts justifiably relied upon Allen's representation that the application for loans, the withdrawal or application of loan proceeds, and control over loans and accounts would be exercised solely by Ms. Grubbs.

In July 2009, U.S. Bank discovered that Allen had applied for loans in the name of Capital Concepts by Strunk-Zwick through the use of forgery, fraudulent

documents, and wrongful transactions, and had opened loans and accounts in its name for her.

U.S. Bank, by and through Allen, failed to disclose to Capital Concepts that Strunk-Zwick, and not Ms. Grubbs, used forged documents to apply for SinglePoint and ACH services/loans, as well as other loans, and that she had disbursed proceeds from the loans.

Capital Concepts' money was directed away from it as a result of U.S. Bank's acceptance of false and unauthorized loan and account initiating documents and applications.

U.S. Bank is liable to Capital Concepts for Allen's conspiracy with Strunk-Zwick to commit fraud, conversion of its property.

U.S. Bank is liable for the fraud of its corporate officers.

(Doc. 54, Ex. 3, ¶¶ 930-48).

U.S. Bank asserts plaintiffs cannot plausibly allege that defendant Allen falsely represented to plaintiff Linda Grubbs that only she would have signatory authority over plaintiff Capital Concepts' accounts with U.S. Bank because the proposed amended complaint and exhibits attached thereto demonstrate that plaintiff Grubbs was consistently required to sign off on loans or accounts opened by Capital Concepts at U.S. Bank. (Doc. 57 at 9-10). The existence of allegations or evidence that plaintiff Linda Grubbs was often required to act as a signatory on Capital Concepts' U.S. Bank accounts does not demonstrate that plaintiff cannot plausibly claim that defendant Allen's representations that she would have sole signatory authority was not false, given plaintiffs' allegations that defendant Allen and defendant Strunk-Zwick conspired to get defendant Strunk-Zwick improper authority over these accounts. *See* Doc. 54, Ex. 3, ¶ 937. The Court notes that U.S. Bank asserts that it "consistently" required plaintiff Linda Grubbs to act as a signatory. (Doc. 57 at 10). This does not mean it is not plausible that there were instances where another individual was permitted to act as signatory on these accounts. Accordingly, the

undersigned finds that plaintiffs' proposed amended complaint states a plausible claim of fraud against defendant U.S. Bank.

U.S. Bank further asserts plaintiffs' fraud claim must fail as it pertains to conduct of its employee, defendant Allen, committed outside the scope of his employment; thus, U.S. Bank cannot be held liable for the alleged tortious conduct under a *respondeat superior* theory. (Doc. 57 at 10-11). Plaintiffs argue that whether or not defendant Allen was acting within the scope of his duty is a question of fact and is not a proper basis for denying the motion to demand. (Doc. 71 at 4-5). Plaintiffs' are correct.

"Under Ohio law, an employee acts within the scope of his employment if the employee acts within his authority during the course of employment even though acting intentionally or maliciously." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). Whether an employee was acting within the scope of his employment is a question of fact; however, "when reasonable minds can come to but one conclusion . . . the issue regarding scope of employment become[s] a question of law." *Leach v. Walls*, 993 F. Supp. 1103, 1107 (N.D. Ohio 1997) (quoting *Osborne v. Lyles*, 587 N.E.2d 825 (Ohio 1992)).

It is clear that the parties dispute whether defendant Allen was acting within the scope of his duties. Defendant U.S. Bank argues that defendant Allen acted adversely to its interests. Plaintiffs assert that the relevant inquiry is not the ultimate harm to defendant, but whether defendant Allen's initial conduct was harmful to U.S. Bank. (Doc. 57 at 11; Doc. 71 at 5). The above-cited allegations pertaining to defendant Allen's conduct do not clearly demonstrate that he was acting outside of his authority or adversely to the interests of U.S. Bank. Consequently, whether he was acting within the scope of his employment during the time of the alleged conduct is a question of fact inappropriate for resolution at the motion to dismiss, or amend, stage. *See*

*Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 590 (6th Cir. 2000). The undersigned accordingly finds that plaintiffs' proposed amended complaint states a plausible claim for fraud against defendant U.S. Bank and plaintiffs' motion to amend should be granted.

U.S. Bank's final argument is that amendment is futile as plaintiffs' conspiracy to commit fraud claim fails because: (1) a conspiracy to commit fraud requires an underlying fraud claim and plaintiffs fail to state a claim for fraud, as discussed above; (2) the conspiracy claim suffers from fatal pleading deficiencies; and (3) defendant Allen acted outside the scope of his employment and his conduct cannot be imputed to U.S. Bank. (Doc. 57 at 11-12). As the Court determines that plaintiffs state a viable fraud claim against U.S. Bank, and that the issue of whether defendant Allen was acting within the scope of his employment is not proper for resolution at this time, U.S. Bank's first and third arguments are not well-taken. The sole remaining inquiry is, thus, whether plaintiffs have sufficiently pleaded their conspiracy claim such that it could withstand a Rule 12(b)(6) challenge.

U.S. Bank contends that the conspiracy claim must fail because plaintiffs have not alleged actual damages resulting from the conspiracy in addition to damages related to the underlying fraud. (Doc. 57 at 12, citing *Power Mktg. Direct, Inc. v. Ball*, No. 2:03-cv-1004, 2004 WL 5826149, at *10 (S.D. Ohio Apr. 6, 2004); *Avery v. City of Rossford*, 762 N.E.2d 388 (Ohio App. Ct. 2001)). Plaintiffs fail to address this argument in their reply brief. For the following reasons, the undersigned finds that plaintiffs proposed amended complaint states a claim for conspiracy against U.S. Bank.

The Ohio Supreme Court defines civil conspiracy as "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866

(Ohio 1995) (quoting *LeFort v. Century 21-Maitland Realty Co.*, 512 N.E.2d 640, 645 (Ohio 1987)). "Thus, to establish a claim of civil conspiracy, plaintiff must allege: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Ohio Bureau of Workers' Compensation v. MDL Active Duration Fund, Ltd.*, 476 F. Supp.2d 809, 825 (S.D. Ohio 2007) (citing *Kenty*, 650 N.E.2d 863). Defendants assert that plaintiff "must allege actual damages attributable to the conspiracy in addition to actual damages caused by the underlying tort." (Doc. 57 at 12, quoting *Power Marketing Direct*, 2004 WL 5826149, at *10).

At the outset, the Court notes that the above quote relied on by U.S. Bank was not a holding of the court in *Power Marketing Direct,* but rather was a recitation of the defendant's argument in that matter. In reality, Ohio Courts are split as to whether it is necessary to include allegations of damages contributable to a conspiracy in addition to those stemming from the underlying tort to state a cognizable claim for civil conspiracy. Compare *Crosby v. Beam*, 615 N.E.2d 294, 304 (Ohio App. Ct. 1992) with *Gosden v. Louis*, 687 N.E.2d 481, 497 (Ohio App. Ct. 1996). The *Gosden* court held that in order to be able to recover damages under a civil conspiracy claim the damages "must have been caused by a tort committed in furtherance of the conspiracy[,]" but this does not require the plaintiff to allege additional damages. *Gosden*, 687 N.E.2d at 220-21. The Sixth Circuit has discussed this split of authority and determined that the *Gosden* court's interpretation is correct. *See Peltz v. Moretti*, 292 F. App'x 475, 481 n.2 (6th Cir. 2008). In light of the Sixth Circuit's express adoption of the *Gosden* court's determination that claims for civil conspiracy do not require allegations of damages directly attributable to the conspiracy in addition to those attributable to the underlying tort, plaintiffs' proposed amended complaint states a claim against U.S. Bank for civil conspiracy to commit fraud.

The Court finds that plaintiffs' proposed amended complaint is not futile with regard to the fraud and conspiracy to commit fraud claims against U.S. Bank.

3. *The Sheakley defendants*[7]

The Sheakley defendants assert plaintiffs' motion to amend should be denied for futility because: (1) the proposed amended complaint contains allegations that are fatal to plaintiffs' tortious interference, breach of contract, breach of fiduciary duty, fraud, and RICO claims; (2) plaintiffs lump together the proposed new Sheakley entity defendants without alleging their individual liability; (3) the relevant statutes of limitations bar plaintiffs' claims against the proposed new Sheakley entity defendants; and (4) plaintiffs' proposed amendment does not cure the deficiencies the Sheakley defendants maintain exist in the original complaint and, thus, the claims are subject to dismissal under Rule 12(b)(6). Each argument will be addressed in turn.

**Fatal admissions.** The Sheakley defendants assert that plaintiffs admitted in their brief (Doc. 46) in opposition to the Sheakley defendants' motion to dismiss (Doc. 25) that:

> ☐ the Sheakley defendants had no knowledge of any agreements that would make it inappropriate to hire Defendant Angelia Strunk-Zwick or to transition clients from Tri-Serve to Sheakley HR (*see id.*; Pls.' Opp., Dkt. 46, at 26-27);
> ☐ the Sheakley Defendants never communicated with them in the lead-up to Ms. Strunk-Zwick's transition (*see* Sheakley Defs.' Reply, Dkt. 52, at 1-2; Pls.' Opp., Dkt. 46, at 33); and
> ☐ Sheakley HR offered to return Tri-Serve's clients to Ms. Grubbs in December 2009, and Plaintiffs declined the offer. (*See* Sheakley Defs.' Reply, Dkt. 52, at 2-3; Compl., Dkt. 1, ¶¶ 786, 796)

(Doc. 55 at 11). The Sheakley defendants contend that the above "admissions" are not retractable and are fatal to plaintiffs' claims against them. (*Id.*) In their reply, plaintiffs assert that these claims have already survived a motion to dismiss and that the proposed amended complaint merely includes further factual allegations in support of their fraud claim and seeks to

---

[7]The analysis contained herein applies to the arguments raised by defendant Angelia Strunk-Zwick in opposition to plaintiffs' motion to amend as she rests on the arguments raised by the Sheakley defendants. *See* Doc. 66.

add previously unknown Sheakley entity defendants. (Doc. 72 at 5). Neither parties' arguments are persuasive.

The pleadings and briefs cited above do not constitute fatal admissions. First, plaintiffs never admitted that the Sheakley defendants had no knowledge that would have made it inappropriate to hire defendant Angelia Strunk-Zwick. Rather, the portion of the brief cited by defendant relates to plaintiffs' assertion that Matt Sheakley and Sheakley defendant managers failed to conduct due diligence as it relates to defendant Angelia Strunk-Zwick's employment agreements. *See* Doc. 46 at 26-27. A reasonable interpretation of plaintiffs' argument is that the Sheakley defendants were purposefully ignorant of these facts due to their desire to conspire with defendant Angelia Strunk-Zwick for purposes of their own financial gain. The Court thus declines to find that plaintiffs' legal argument equates to a fatal admission.

Second, the assertion that plaintiffs admit in their brief opposing the Sheakley defendants' motion to dismiss that the defendants "never communicated with them in the lead-up to Ms. Strunk-Zwick's transition" does not accurately represent the substance of plaintiffs' memorandum. The page cited by defendants includes plaintiffs' arguments that the Sheakley defendants failed to notify plaintiffs regarding the theft of plaintiffs' property by defendants' employees. *See* Doc. 46 at 33. Plaintiffs do not assert that these defendants never communicated with them during the relevant period. The Court declines to find that plaintiffs' statement is fatal to their claims.

Third, the Sheakley defendants argue that plaintiffs' allegations that plaintiffs declined defendants' offer to return clients to plaintiff Tri-Serve is fatal. (Doc. 55 at 11, citing Doc. 1, ¶¶ 786, 796).[8] Defendants misapprehend plaintiffs' pleading. Notably, paragraph 786 of the

---

[8]These allegations are found at paragraphs 755 and 765 of the proposed amended complaint. *See* Doc. 54, Ex. 3, ¶¶ 755, 765.

original complaint relates entirely to a representation made by an attorney employed by defendant Frost, Brown and Todd and has nothing to do with any representation to return clients. Paragraph 796 alleges that this attorney represented that the Sheakley defendants were willing to transfer clients back to plaintiff Tri-Service; however, the paragraph further alleges that this was an empty proposal. *See* Doc. 1, ¶ 796; Doc. 54, Ex. 3, ¶ 765. In light of this qualifying allegation, the Court finds that defendants' argument that this paragraph is a fatal admission is without merit.

Lastly, the Court notes that plaintiffs' assertion that the original complaint has survived a Rule 12(b)(6) motion (Doc. 72 at 5) is wholly contradicted by the record. The defendants in this matter have filed six motions to dismiss in this matter. (Docs. 17, 21, 25, 26, 35, 58). To date, these motions are still pending. This Court has not issued any ruling as to whether plaintiffs' original complaint states a claim for relief under Fed. R. Civ. P. 12(b)(6); accordingly, this does not serve as a basis to grant plaintiffs' motion to amend. Nevertheless, the undersigned finds that plaintiffs have not made fatal admissions which would justify denying the motion to amend.

**"Lumped together" entities.** The Sheakley defendants maintain that plaintiffs' attempt to add seven new Sheakley entities is futile as they do not allege facts distinguishing the conduct of each entity. (Doc. 55 at 12, citing *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*, No. 01-cv-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004)). Plaintiffs assert that they are only required to assert facts entitling them to recovery and that it is necessary to conduct discovery into the Sheakley corporate structure to determine how liability should be apportioned. (Doc. 72 at 5-6). The Court agrees with plaintiffs.

Notably, the New York District Court did not dismiss the *Appalachian Enterprises* complaint solely based on the plaintiff's lumping together of corporate entities, but because it

suffered from various pleading deficiencies. *See Appalachian Enterprises*, 2004 WL 2813121, at *4-8 (dismissing complaint for, *inter alia*, lack of personal jurisdiction and failure to plead fraud with specificity). As discussed above, the Sheakley defendants have failed to establish that they will be prejudiced by the addition of these entities as defendants. It appears that they have been named based on recently discovered information relating to the corporate structure of the Sheakley enterprise; thus, it is reasonable to assume that these entities will adopt the same litigation strategy as the previously named Sheakley defendants. *See* Doc. 72 at 2. The particular role played by each corporate entity is "a matter to be fleshed out during discovery" and plaintiffs' motion to amend should not be denied on this basis. *U.S. v. Osborne*, No. 1:11-cv-1029, 2011 WL 7640990, at *5 (N.D. Ohio Dec. 15, 2011) (quoting *City of Newburgh v. Sarna*, 690 F. Supp.2d 136, 162-63 (S.D.N.Y. 2010)).

**Statutes of Limitation.** The Sheakley defendants further assert that addition of the new Sheakley entities as defendants should not be allowed as the claims are barred by the relevant Statutes of Limitations and case law, citing *Debois v. Pickoff, M.D.*, No. 3:09-cv-230, 2011 WL 1233665 (S.D. Ohio Mar. 28, 2011). (Doc. 55 at 13-15). The Court finds that plaintiffs' claims against the newly named Sheakley entities should be permitted under Fed. R. Civ. P. 15(c)(1)(C) as they relate back to the claims raised in the original complaint.

"[R]elation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending parties knowledge. . . ." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 539, 130 S.Ct. 2485, 2490 (2010). The *Krupski* plaintiff brought negligence claims for injuries received on a cruise ship against an entity known as Costa Cruise based on information found on the cruise ticket. *Id*. Subsequently, the plaintiff was made aware by Costa Cruise that the proper defendant was Italian corporation Costa Crociere and she sought to amend

her complaint at the summary judgment stage to add Costa Crociere as a defendant. *Id.* at 2491. The Supreme Court held that the plaintiff's mistake in naming Costa Cruise did not foreclose allowing an amendment at that stage as Costa Cruise and Costa Crociere were "related corporate entities with very similar names" and that the "interrelationship and similarity heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa cruise is named in a complaint that actually describes Costa Crociere's activities." *Id.* at 2498. The Supreme Court therefore determined that the amended complaint was permissible as it related back to the original pleading. *Id.*

Here, as in *Krupski*, the proposed Sheakley defendants and the already named Sheakley defendants are corporate entities "with very similar names that are easily confused." *Barbour v. Emkay, Inc.(Illinois)*, No. 11-1869, 2011 WL 3438189, at *4 (E.D. Penn. Aug. 5, 2011) (allowing amendment under Rule 15(c)(1)(C) based on *Krupski* rationale). In consideration of this and the apparent interrelationship between these two groups, the Sheakley defendants should have known that the proposed new defendants were likely proper parties to this lawsuit. Accordingly, the amendment should be allowed under Fed. R. Civ. P. 15(c)(1)(C).

Insofar as the Sheakley defendants contend that the *Debois* decision precludes amendment at this time, the undersigned finds this argument misplaced. The court in *Debois* never held that plaintiffs were prohibited from naming additional defendants where those defendants were part of a corporate conglomerate that was already a party to the lawsuit. In *Debois*, the plaintiff sought to name new individuals as defendants who had not been served with process, were not parties to the current action, and had no actual or constructive notice that they would likely be named as defendants to the action. *See Debois*, 2011 WL 1233665, at *3, 8-9. Here, the defendants plaintiffs seek to add are allegedly part of the Sheakley defendants' larger

corporate structure. Thus, *Debois* is distinguishable and the addition of these defendants should

be permitted as the amendment relates back to the original complaint. *See Krupski*, 130 S.Ct. at

2498.

      The Court finds that these proposed defendants relate back to plaintiffs' original

complaint such that amendment should be permitted:

> Relation back is dependent upon four factors, all of which must be satisfied: (1)
> the basic claim must have arisen out of the conduct set forth in the original
> pleading; (2) the party to be brought in must have received such notice that it will
> not be prejudiced in maintaining its defense; (3) that party must or should have
> known that, but for a mistake concerning identity, the action would have been
> brought against it; and (4) the second and third requirements must have been
> fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29 (1986).  There is no dispute that the basic claim against

the newly identified proposed defendants arises out of the allegations set forth in plaintiffs'

original complaint.  As stated above, these proposed defendants, by virtue of being under the

Sheakley Enterprise umbrella, were put on constructive notice that plaintiffs may seek to add

them as defendants.  *See Berndt v. State of Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986).  With

regard to the third factor, the only representation before the Court on this issue is that the

complex structure of the Sheakley enterprise required plaintiffs to engage in additional discovery

to discover the identities of the proposed defendants.  *See* Doc. 72 at 2.  In light of this

representation and the ostensible relationship between the Sheakley defendants and the proposed

new defendant entities, the Court finds that these entities should have known that plaintiffs might

seek to raise claims against them.  The Sheakley defendants do not assert that plaintiffs' original

complaint includes claims barred by statutes of limitations.  Thus, the fourth factor – whether the

Sheakley defendants were timely put on notice – is satisfied.  Consequently, the undersigned

finds that plaintiffs' claims against the newly proposed Sheakley entities relate back to the original complaint and are not barred by the statute of limitations.

**Rule 12(b)(6) argument.** For their final argument, the Sheakley defendants assert in one page that plaintiffs' proposed 159 page complaint fails to state a claim and would not survive a Rule 12(b)(6) motion to dismiss. (Doc. 55 at 16-17). Defendants rely entirely on arguments raised in their motion to dismiss plaintiffs' original complaint without specifying how plaintiffs' proposed amended complaint fails to cure these deficiencies despite the addition of nearly fifty pages of pleading. *See id.* Defendants fail to cite to any portion of the proposed amended complaint; rather, they vaguely assert its deficiency.

The Court declines to recommend denying plaintiffs' motion to amend based on defendants' conclusory argument that has no direct reference to the proposed amendments. It is not the Court's role to delve into the record to make defendants' argument for them. Defendants are not prejudiced in this regard as they may renew their pending motion to dismiss with respect to the amended complaint should the District Court adopt the instant Report and Recommendation.

### IV. Conclusion

For the above reasons, **IT IS RECOMMENDED** that plaintiffs' motion for leave to file their first amended complaint (Doc. 54) be **GRANTED** in part and **DENIED** in part as follows:

1. the motion to amend should be **DENIED** as to Count XII, plaintiffs' aiding and abetting claim against First Financial Bank;

2. plaintiffs concede that they fail to state a claim for unjust enrichment against defendant U.S. Bank; thus the motion to amend should be **DENIED** as to Count XX of the proposed amended complaint;

3. the motion to amend should be **GRANTED** as to the remaining counts for the reasons

stated above.

In light of the above recommendations, the undersigned further **RECOMMENDS** that

defendants' respective motions to dismiss (Docs. 17, 21, 25, 26, 35, 58) be **DENIED** as moot

Date: 1/17/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LINDA GRUBBS, *et al.*,                                     Case No. 1:13-cv-246
      Plaintiffs,

                                      Dlott, J.
v.                                                        Litkovitz, M.J.

SHEAKLEY GROUP, INC., *et al.*,
      Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**1. Article Addressed to:**

Angelina Strunk-Zwick
70744-061
Federal Medical Center-
Satellite Camp
Atwood Hall-P.O. 14525
Lexington, KY 40512-4525

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

**3. Service Type**
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

**4. Restricted Delivery? (*Extra Fee*)**  ☐ Yes

**2. Article Number**
(Transfer from service label)

7011 3500 0001 5345 9947

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540