# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LINDA GRUBBS, *et al.*,
    Plaintiffs,

vs.

SHEAKLEY GROUP, INC., *et al.*,
    Defendants.

Case No. 1:13-cv-246

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on: (1) the Sheakley Defendants'[1] motion to dismiss plaintiffs' substituted first amended complaint (Doc. 100), plaintiffs' response in opposition (Doc. 115), and the Sheakley Defendants' reply memorandum (Doc. 119); (2) defendant Angela Strunk-Zwick's (Strunk-Zwick) motion to dismiss plaintiffs' substituted first amended complaint (Doc. 109), plaintiff's response in opposition (Doc. 116), and Strunk-Zwick's reply memorandum (Doc. 120); (3) defendant First Financial Bank, National Association's (First Financial) motion to dismiss Count XVIII of plaintiffs' substituted first amended complaint, plaintiff's unjust enrichment claim against it (Doc. 88), plaintiffs' response in opposition (Doc. 112), and First Financial's reply memorandum (Doc. 118); and (4) defendant Frost Brown Todd LLC's (FBT) motion to dismiss Count XIX of plaintiffs' substituted first amended complaint, plaintiffs' unjust enrichment claim against it (Doc. 94), plaintiffs' response in opposition (Doc. 113), and FBT's reply memorandum (Doc. 114).

---

[1]The Sheakley Defendants are comprised of the following individuals and entities: Larry Sheakley, Matt Sheakley, Thomas E. Pappas, Jr., Steve Wolf, Bryan Bundy, Maureen Surkamp, Ken Weber, Susan Fernbach, Kimberly Martin, Heather Fair, the Sheakley Group, Inc., Sheakley Benefit Plans Agency, Inc., Sheakley HR, LLC, Pay Systems of America, Inc. d/b/a Sheakley Pension Administration, Sheakley Medical Management Resources, LLC, Sheakley Enterprises, LLC, Sheakley Resolution Systems, LLC, Sheakley Retirement Plans, LLC, Sheakley-UniService, LLC, Sheakley Unicomp, Inc., Sheakley HR 1, LLC, Sheakley HR II, LLC, Sheakley HR III, LLC, Sheakley HR IV, LLC, and Sheakley HR NG, LLC. *See* Plaintiff's Substituted First Amended Complaint, Doc. 87.

**I. Background and Procedural History**

Plaintiffs Linda Grubbs, Tri-Serve, Ltd., Tri-Serve #1, LLC, and Capital Concepts, Inc. (plaintiffs) bring federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, and Lanham Act, 15 U.S.C. § 1051 *et seq*., claims as well as various state law claims against the Sheakley Defendants, defendant Strunk-Zwick, First Financial, and FBT. Plaintiffs filed their original complaint on April 15, 2013. (Doc. 1). All defendants filed motions to dismiss, *see* Docs. 17, 21, 25, 26, 35, 58, and on September 17, 2013, plaintiffs filed a motion to file a first amended complaint. *See* Doc. 54. On January 17, 2014, the undersigned issued a Report and Recommendation that plaintiffs' motion to amend be granted in part and denied in part.[2] *See* Doc. 75. The Report and Recommendation was adopted in its entirety by the District Judge on March 10, 2014. (Doc. 81). Plaintiffs filed their substituted first amended complaint on April 1, 2014.[3] (Doc. 87).

The following is a brief summarization of plaintiffs' allegations. Linda Grubbs is the sole owner of Capital Concepts, Inc. (Capital Concepts), a financial planning, wealth management, and tax preparation firm. In October 2008, Capital Concepts purchased Tri-Serve Ltd. and Triserve #1 LLC (Tri-Serve), Professional Employment Organizations (PEO) that provide certain human resources and financial services to corporations. Defendant Strunk-Zwick worked for Tri-Serve as a managing director, but she resigned in July 2007 to serve as the manager of Capital Concepts. After Capital Concepts acquired Tri-Serve, defendant Strunk-Zwick also served as manager of Tri-Serve. Plaintiffs allege that from the inception of her employment with Capital Concepts, defendant Strunk-Zwick was involved in a scheme to

---

[2]Specifically, the Court recommended that the motion to amend be denied with respect to plaintiffs' aiding and abetting claim against First Financial and plaintiffs' unjust enrichment claim against U.S. Bank, which is no longer a defendant in this matter. The motion to amend was granted in all other respects. (Doc. 75 at 28-29).

[3]Plaintiffs' first amended complaint was stricken from the record pursuant to plaintiffs' request. The substituted first amended complaint is the controlling pleading. *See* Docs. 85, 86.

defraud Capital Concepts, and later Tri-Serve, and to embezzle assets for her own purposes and for the benefit of the Sheakley Defendants.  In furtherance of this scheme, defendant Strunk-Zwick allegedly communicated and conspired with, *inter alia*, Larry Sheakley to arrange for the transfer of clients, employees Susan Fernbach and Kimberly Martin, and other assets from Capital Concepts and Tri-Serve to the Entity Sheakley Defendants.  Plaintiffs allege that defendants anticipated reaping significant financial benefits from the acquisition of these assets, including defendant Strunk-Zwick becoming an employee of the Sheakley Defendants.  In July 2009, defendant Strunk-Zwick and defendants Kimberly Martin and Susan Fernbach resigned from their position with Capital Concepts to work for the Sheakley Defendants.  Shortly thereafter, plaintiff Linda Grubbs presented evidence of defendant Strunk-Zwick's scheme to defraud plaintiffs, including falsified bank documents, to a fraud investigator with U.S. Bank. Following an investigation by federal authorities, defendant Strunk-Zwick was charged criminally and ultimately convicted of wire fraud.

Plaintiffs' 159-page, 1013-paragraph substituted first amended complaint raises the following claims:

- Count I: Breach of Contract against Strunk-Zwick;

- Count II: Breach of Contract against Martin and Fernbach;

- Count III: Breach of Contract – Sheakley-UniService, Inc.;

- Count IV: Trade Name Infringement and False Designation of Origin under 15 U.S.C. § 1125(a) against the Entity Sheakley Defendants;

- Count V: False Advertising under 15 U.S.C. § 1125(a) against the Entity Sheakley Defendants and Strunk-Zwick;

- Count VI: Unfair Competition against the Entity Sheakley Defendants and Strunk-Zwick;

- Count VII: Breach of Fiduciary Duties against Strunk-Zwick, Fernbach, and Martin;

- Count VIII: Breach of Fiduciary Duties against Sheakley-UniService, Inc.;

- Count IX: Conversion against Strunk-Zwick, Fernbach, Martin, and the Sheakley Defendants;

- Count X: Civil Conspiracy against the Sheakley Defendants, Strunk-Zwick, Fernbach, and Martin;

- Count XI: Fraud and Civil Conspiracy to Commit Fraud against Strunk-Zwick, James Dean Allen, and U.S. Bank;

- Count XII: Tortious Interference with Business Relationships against Strunk-Zwick, Fernbach, Martin, and the Sheakley Defendants;

- Count XIII: Fraud against Strunk-Zwick;

- Count XIV: Violation of the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1962(c), against Strunk-Zwick and the Sheakley Defendants;

- Count XV: Violation of the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1962(d), against Strunk-Zwick and the Sheakley Defendants;

- Count XVI: Misappropriation of Trade Secrets (Ohio Rev. Code § 1333.61, *et seq.*) against the Sheakley Defendants, Strunk-Zwick, Martin, and Fernbach;

- Count XVII: Unjust Enrichment against Strunk-Zwick and the Entity Sheakley Defendants;

- Count XVIII: Unjust Enrichment against First Financial; and

- Count XIX: Unjust Enrichment against FBT.

(*Id.*).

## II. Motion to Dismiss Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Additionally, a court may consider exhibits attached to the complaint or motion to dismiss under certain circumstances. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO*, Inc., 108 F.3d 1546 (6th Cir. 1997)). Though, generally, a court may not consider matters outside of the pleadings when ruling on a motion to dismiss without converting it into a Rule 56 motion for summary judgment, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

With these principles in mind, the Court reviews plaintiffs' substituted first amended complaint.

## III. Resolution

### A. Lanham Act Claims

Plaintiffs raise two claims under the Lanham Act: (1) Count IV: Trade Name

Infringement and False Designation of Origin under 15 U.S.C. § 1125(a) against the Entity Sheakley Defendants; and (2) Count V: False Advertising under 15 U.S.C. § 1125(a) against the Entity Sheakley Defendants and defendant Strunk-Zwick. *See* Doc. 87, ¶¶ 882-901. The Entity Sheakley Defendants and defendant Strunk-Zwick argue that plaintiffs' substituted first amended complaint fails to allege facts sufficient to state cognizable Lanham Act claims against them.

Regarding Count IV, the Entity Sheakley Defendants argue that plaintiffs' conclusory and boilerplate recitation of the elements of a trademark infringement claim lacks sufficient supporting facts to state a plausible claim for relief. To the extent plaintiffs' claim is based on July 2 and July 3, 2009 emails sent by defendant Strunk-Zwick, *see id.* ¶¶ 381, 840-41, 967(bg-bh), 973(l); Doc. 1, Exhs. 132 and 135 at PAGEID #921, 927-30,[4] the Sheakley Defendants contend the contents of the emails do not demonstrate the requisite criteria of a trademark infringement claim, namely that the emails were likely to cause confusion as to whether the services being provided were offered by defendants or plaintiffs. (Doc. 100 at 19-22).

Defendants further argue that plaintiffs have failed to state a false advertising Lanham Act claim as alleged in Count V of the substituted first amended complaint. Defendants argue that the July 2009 emails upon which plaintiffs base their claims do not include statements of fact about goods and services nor does the complaint contain allegations of conduct which resembles "false advertising" – necessary elements of a Lanham Act false advertising claim. Defendants contend that plaintiffs' failure to include these requisite allegations is fatal to the claim and they seek dismissal of Count V on this basis. (Doc. 100 at 22-23; Doc. 109 at 9-11)

---

[4] The July 3, 2009 email is one of 255 exhibits to plaintiffs' substituted first amended complaint. These exhibits are found as attachments to plaintiffs' initial complaint. *See* Doc. 1, Attachments 1-10. Because there are multiple exhibits contained within each attachment to the initial complaint, the individual page numbers from the Case Management/Electronic Case Filing system is included for reference purposes.

The pertinent allegations are as follows.  On July 2 and 3, 2009, defendant Strunk-Zwick sent emails to a limited number of individuals plaintiffs identify as Tri-Serve clients.  The emails provide that defendants Strunk-Zwick, Kimberly Martin, and Susan Fernbach were partnering with Sheakley HR and moving their offices.  The emails further provide that there would be no change to the services provided aside from new contact information for defendants Strunk-Zwick, Martin, and Fernbach.  The new address was listed as: "TriServe LTD c/o Sheakley HR Solutions."  Tri-Serve's address and logo appear at the bottom of the emails.  Plaintiffs allege that the Sheakley Defendants used Tri-Serve's name in conjunction with their advertising and promotional activities to the public and represented that an affiliation existed between the two. Plaintiffs allege that Tri-Serve's name was used without their consent in promotional materials sent to Sheakley customers.  In support, plaintiffs cite to the July 3, 2009 email sent by defendant Strunk-Zwick.  The remainder of plaintiffs' allegations are simply recitations of the elements of a Lanham Act trademark infringement claim.  (Doc. 1, Exhs. 132, 135 at PAGEID #921, 927-30; Doc. 87, ¶¶ 882-95).

The undersigned finds that plaintiffs have failed to state a claim for trademark infringement under the Lanham Act against the Entity Sheakley Defendants.  "To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)).  The parties do not dispute that plaintiffs hold a valid trademark to the TriServe name and logo.  Accordingly, the only issue before the Court is whether the Sheakley Defendants used plaintiffs' mark in commerce in such a way that it would likely cause confusion as to the origin of defendants' services.  The Court finds that plaintiffs'

substituted first amended complaint fails to satisfy this "likely to cause confusion" element and should therefore be dismissed.

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). The Sixth Circuit has enumerated eight factors that courts should weigh in determining whether a likelihood of confusion exists: "(1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.; see also Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th Cir. 2003). However, there is a threshold question that a claim must meet: "whether the defendants are using the challenged mark in a way that identifies the source of their goods." *Hensley Mfg.*, 579 F.3d at 610 (quoting *Interactive Prods.*, 326 F.3d at 695). If not, then a trademark infringement claim fails as the mark is being used in a "non-trademark way." *Interactive Prods.*, 326 F.3d at 695.

The July 2009 emails which form the basis of plaintiffs' trademark infringement claim establish the Tri-Serve name and logo were used in a "non-trademark way." The central issue is whether Tri-Serve's trademark was used to identify the source of defendants' goods and thus created a likelihood of confusion. The July 2009 emails from defendant Strunk-Zwick communicate to the selected client-recipients that these clients would be represented by Sheakley effective July 6, 2009. The July 3, 2009 email specifies that these clients "will begin to see the Sheakley HR name" as opposed to the name TriServe in future communications. (Doc. 1, Ex.

135 at PAGEID # 928).  Aside from the payroll time submission website being maintained by www.triservehr.com, the communication provides new telephone numbers, new "sheakleyhr.com" email addresses, and a new business address on One Sheakley Way.  Though the TriServe name and logo appears on the bottom of these emails, the communications make clear that Sheakley would be the organization providing future services, not TriServe.

The July 2 and 3 emails do not use the TriServe name or logo to identify the source of Sheakley goods but to identify to certain clients that it would be Sheakley and *not* TriServe that would be providing future services.  *See* Doc. 1, Ex. 135 at PAGEID #928.  The use of TriServe's mark in a "non-trademark way" as a source of comparison between the two organizations and to identify to the email recipients a change in service provider does not make the Entity Sheakley Defendants liable to plaintiffs for trademark infringement.  *See, e.g.*, *Dow Corning Corp. v. Jie Xiao*, No. 11-10008-BC, 2011 WL 2015517, at *6-7 (E.D. Mich. May 20, 2011) (finding that the defendant's use of competitors trademark as a point of comparison in marketing communications was use in a "non-trademark way" and could not form a basis for a trademark infringement claim).  Because the emails sent by defendant Strunk-Zwick clearly identify Sheakley as the future service provider, there is no likelihood of confusion as to the origin of the future services coming from TriServe.  *See Hensley*, 579 F.3d at 611 (dismissing trademark infringement claim where the defendant used the plaintiff's trademark in "non-trademark way" in advertisements that clearly identified the source of the advertised goods).  Notably, plaintiffs fail to address the Entity Sheakley Defendants' specific legal arguments in their response to the motion to dismiss despite submitting a 61-page memorandum in contravention of the Local Rules.  *See* S.D. Ohio Civ. R. 7.2(a)(3).  Plaintiffs simply recite their formulaic and conclusory allegations in lieu of putting forth any responsive legal arguments or

citing to any authority which would support a different outcome. *See* Doc. 115 at 33-37. While

plaintiffs' substituted first amended complaint otherwise alleges the elements of a trademark

infringement claim, their conclusory and "formulaic recitation" is insufficient to survive the

Entity Sheakley Defendants' motion to dismiss this claim. *See Iqbal*, 556 U.S. at 687 ("Rule 8

does not empower respondent to plead the bare elements of his cause of action . . . and expect his

complaint to survive a motion to dismiss."). Plaintiffs' Lanham Act trademark infringement

claim against the Entity Sheakley Defendants should therefore be dismissed.

Defendants Strunk-Zwick and the Entity Sheakley Defendants also argue that Count V of

plaintiffs' substituted first amended complaint should be dismissed because plaintiffs have failed

to allege facts sufficient to state a claim for false advertising under the Lanham Act. Defendants

argue that the claim is deficient as a matter of law because plaintiffs have not alleged facts

establishing that that they made false statements about plaintiffs' goods or services. Defendants

further argue that the false advertising claim is deficient because plaintiffs have not established

that any purported false statement penetrated the relevant market. (Doc. 100 at 22-23; Doc. 109,

9-11). Defendants' arguments are well-taken.

To state a claim for false advertising claim under the Lanham Act, a complaint must

allege that: (1) the defendants made false or misleading statements of fact concerning their own

product or another's product; 2) the statement actually deceives or tends to deceive a substantial

portion of the intended audience; 3) the statement is material in that it will likely influence a

deceived customer's purchasing decisions; 4) the statements were introduced into interstate

commerce; and 5) there is some causal link between the challenged statements and the harm to

the plaintiff. *Balance Dynamics Corp. v. Schmitt Inds., Inc.*, 204 F.3d 683, 689 (6th Cir. 2000).

The alleged false statements must be made in "commercial advertising or promotion." *See* 15

U.S.C. § 1125(a). A statement constitutes "commercial advertising or promotion" where it is: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; (4) that is disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. *See LidoChem, Inc. v. Stoller Enterprises, Inc.*, 500 F. App'x 373, 379 (6th Cir. 2012); *Champion Labs., Inc. v. Parker-Hannifin Corp.*, 616 F. Supp.2d 684, 694 (E.D. Mich. 2009); *Int'l Techs. Consultants, Inc. v. Stewart*, 554 F. Supp.2d 750, 755 (E.D. Mich. 2008); *White Mule Co. v. ATC Leasing Co.*, 540 F. Supp.2d 869, 897 (N.D. Ohio 2008); *Kansas Bankers Sur. Co. v. Bahr Consultants, Inc.*, 69 F. Supp.2d 1004, 1012-13 (E.D. Tenn. 1999). "At a minimum, commercial speech must 'target a class or category of purchasers or potential purchasers, not merely particular individuals.'" *LidoChem*, 500 F. App'x at 379 (quoting *Podiatrist Ass'n v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003)).

Plaintiffs allege that defendant Strunk-Zwick and the Entity Sheakley Defendants "made false and misleading statements of alleged fact in their commercial advertisements [about Tri-Serve's PEO[5] services, services in interstate commerce, which] deceived or had the capacity to deceive segments of Tri-Serve and Capital Concept's clients and potential customers." (Doc. 87, ¶¶ 897-98, 900). Plaintiffs further allege that "[t]hese false and misleading statements were material and influenced and were likely to influence client and potential customer purchasing decisions" and that "Capital Concepts and Tri-Serve sustained damages and losses as the direct and proximate result" of these false and misleading statements. (*Id.*, ¶¶ 899, 901). *See also* Doc. 87, ¶¶ 364, 380-83, 840, 967(ba), (bg); Doc. 1, Exhs. 132, 135 at PAGEID #921, 928-30

---

[5]Plaintiffs allege that Tri-Serve is a Professional Employment Organization (PEO), a type of Ohio regulated entity that provides outsourcing services of certain employee management tasks, such as employee benefits and payroll, to individual employers. (Doc. 87, ¶¶ 6, 8, 37). *See also* Doc. 87, ¶¶ 364, 380-83, 840, 967(ba), (bg); Doc. 1, Exhs. 132, 135 at PAGEID #921, 928-30.

decisions" and that "Capital Concepts and Tri-Serve sustained damages and losses as the direct and proximate result" of these false and misleading statements. (*Id.*, ¶¶ 899, 901). *See also* Doc. 87, ¶¶ 364, 380-83, 840, 967(ba), (bg); Doc. 1, Exhs. 132, 135 at PAGEID #921, 928-30 (allegations detailing  defendant Strunk-Zwick's communications to Tri-Serve clients informing them that Tri-Serve was merging with Sheakley HR and copies of referenced emails).

Plaintiffs fail to state a Lanham Act claim for false advertising against defendant Strunk-Zwick and the Entity Sheakley Defendants because they have alleged no facts regarding the market penetration of defendants' purportedly false statements.  The exhibits plaintiffs rely on to establish their claim identify only 23 recipients of the July 2009 emails. *See* Doc. 1, Exhs. 132 and 135 at PAGEID # 921, 928.  "Absent allegations as to either the size of the relevant market or the number of entities within that market that [defendants] contacted, it remains entirely speculative as to whether [defendants'] communications have been 'disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within [plaintiffs'] industry." *Infection Prevention Tech., LLC v. UVAS, LLC*, No. 10-cv-12371, 2011 WL 43600007, at *22 (E.D. Mich. July 25, 2011) (quoting *Gordon and Breach Science Publishers S.A. v. American Inst. Of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994)).  Without some factual allegations that the July 2009 emails sent to 23 people represent significant market penetration such that the communications constitute commercial advertising, plaintiffs have failed to allege facts sufficient to state a claim for false advertising under the Lanham Act. *See id. Cf. Veracity Grp., Inc. v. Cooper-Atkins Corp.*, No. 1:11-cv-526, 2012 WL 203415, at *4 (S.D. Ohio Jan. 24, 2012) (declining to dismiss trademark infringement claim for failure to allege facts regarding market penetration where plaintiff alleged a broad scheme of unfair competition

based on facts known and expected to uncover during discovery).[6]  Plaintiffs again provide no

response to defendants' specific arguments as to whether the alleged false statements were

sufficiently disseminated for purposes of stating a false advertising claim.  Rather, plaintiffs

simply reiterate the allegations from their pleading without citing any authority or putting forth

any argument from which this Court can discern a plausible claim for relief under the Lanham

Act.  Plaintiffs' failure to allege facts regarding the market penetration of the July 2009 emails

supports dismissal of the false advertising claim.

Therefore, Counts IV and V of plaintiffs' substituted first amended complaint should be

dismissed.

B.  The RICO Claims

Counts XIV and XV of plaintiffs' substituted first amended complaint are claims against

defendant Strunk-Zwick and the Sheakley Defendants for violations of the Racketeer Influence

and Corrupt Organizations (RICO) Act, pursuant to 18 U.S.C. §§ 1962(c) and (d), respectively.

*See* Doc. 87, ¶¶ 965-89.

The relevant portions of the RICO statute provide:

(c) It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering activity or collection of
unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions
of subsection (a), (b), or (c) of this section.

---

[6]The Court finds *Veracity Group* distinguishable from the instant matter.  The plaintiff in *Veracity Group* alleged the defendant carried out a large-scale scheme of unfair competition against plaintiff through use of a company-wide sales meeting and group conference call wherein the defendant instructed its employees to "go on the offensive" against the plaintiff through use of falsehoods and threats.  *Veracity Group*, 2012 WL 203415, at *1. Here, however, while plaintiffs allege a scheme between the defendants, the only factual allegation supporting their claim relates to the two specific emails sent by defendant Strunk-Zwick in July 2009.  Given the discreteness of the alleged scheme forming the basis of plaintiffs' false advertising claim, the undersigned declines to adopt the reasoning employed by the District Court in *Veracity Group*.

18 U.S.C. §§ 1962(c), (d).  Liability under § 1962(c) is determined when a plaintiff can establish

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima,*

*S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 476, 496 (1985).  A "pattern of racketeering activity"

requires a minimum of two predicate acts of racketeering; wire fraud constitutes a predicate act

of racketeering.  18 U.S.C. § 1961(1), (5).  Pursuant to Fed. R. Civ. P. 9(b), allegations of wire

fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).

Defendants argue that plaintiffs' RICO claims must be dismissed for three reasons: (1)

the scheme alleged by plaintiffs is too short to be considered a "pattern of racketeering activity"

for purposes of stating a plausible RICO claim; (2) the racketeering acts alleged by plaintiffs do

not have sufficient continuity to state a RICO claim under *Fleischhauer v. Feltner*, 879 F.2d

1290 (6th Cir. 1989); and (3) plaintiffs have failed to sufficiently allege the predicate act of fraud

against the Sheakley Defendants, a requisite element of a RICO claim.  (Doc. 100 at 13-18; Doc.

109 at 20-22).

The following is a brief summary of the 20 paragraphs and 135 sub-paragraphs of factual

allegations that form the basis of plaintiffs' § 1962(c) RICO claim.[7]  Plaintiffs allege that

defendant Strunk-Zwick committed acts of racketeering as defined by 18 U.S.C. § 1961

involving wire fraud as part of her scheme to embezzle funds from Capital Concepts and Tri-

Serve for her own purposes and to convey assets to the Entity Sheakley Defendants for future

consideration.  The Sheakley Defendants allegedly conspired with defendant Strunk-Zwick to

further this scheme in order to obtain plaintiffs' assets for their personal financial gain.  In order

to facilitate this scheme, defendant Strunk-Zwick's committed wire fraud by sending email

communications and mail through the United States Postal Service.  Plaintiffs allege that certain

---

[7]Given the breadth of plaintiffs' pleading, the Court declines to recount the allegations in detail for
brevity's sake.  The Court will address the allegations as necessary *infra*.

individual Sheakley defendants[8] likewise committed wire fraud by transmitting email communications in furtherance of their scheme to defraud plaintiffs. This scheme began in February 2009 and ended in the Summer of 2009. (Doc. 87, ¶¶ 965-85).

In support of their § 1962(d) RICO claim, plaintiffs allege that defendant Strunk-Zwick and various Sheakley defendants conspired to commit a pattern of racketeering in violation of 18 U.S.C. § 1962(d). As a result of defendants' violation of 18 U.S.C. § 1962(d), plaintiffs allege they suffered various financial injuries. (Doc. 87, ¶¶ 986-89). For the reasons that follow, the undersigned finds that plaintiffs have failed to allege facts sufficient to state a plausible RICO claim.

Plaintiffs' RICO claims should be dismissed because the alleged "pattern of racketeering activity" lacks the requisite continuity to state a plausible RICO claim. The Supreme Court has held that "a pattern of racketeering activity" has two elements: relatedness and continuity. *See H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Whether the alleged pattern of racketeering activity satisfies the continuity requirement depends on the particular facts of each case. *Id.*

Here, plaintiffs' RICO claims are premised on conduct that occurred within a closed period. Plaintiffs allege that defendant Strunk-Zwick first hatched her plan to defraud them in the beginning of 2009 and that she and the Sheakley Defendants engaged in predicate acts in furtherance of this scheme through the Summer of 2009. *See* Doc. 87, ¶¶ 967-80. The alleged racketeering activity occurred over the period of, at most, eight months. "Although there are no

---

[8]Larry Sheakley, Matt Sheakley, Thomas Pappas, Steve Wolf, Bryan Bundy, Maureen Surkamp, Ken Weber, Susan Fernbach, Kimberly Martin, Heather Fair, Sheakley HR, LLC, d/b/a Sheakley HR Solutions, and Sheakley-UniService, Inc. *See* Doc. 87, ¶ 966.

rigid rules regarding what amounts to 'a substantial period of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006) (quoting *H.J. Inc.*, 492 U.S. at 424)). *See also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994) (predicate acts allegedly occurring over a 17 month period did not satisfy continuity requirement of closed-period analysis); *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992) (affirming dismissal of complaint for failure to satisfy continuity component where alleged fraudulent predicate acts occurred within a six or seven month period).

The single scheme alleged by plaintiffs – defendants' scheme to take plaintiffs' assets – occurred entirely within an eight month period and does not describe a pattern of racketeering activity among defendants sufficient to state a RICO claim. Though the existence of a solitary scheme does not preclude the finding of a pattern of continuing activity, the presence of only one scheme is an important factor for purposes of the continuity analysis. *Vemco, Inc.*, 23 F.3d at 134 (citation omitted). In *Vemco*, the Sixth Circuit affirmed the District Court's decision to dismiss RICO claims where the alleged predicate acts in furtherance of a single scheme were committed in a closed period of 17 months. *Id.* at 134. Applying the rationale from *Vemco* to the instant case, plaintiffs' allegations are insufficient to meet the continuity element of a RICO claim. The RICO statute was enacted to target long-term criminal activity, *see H.J. Inc.*, 492 U.S. at 242, not discrete acts where there is no concern of reoccurrence. Plaintiffs' allegations "simply do not raise a reasonable expectation that discovery will reveal evidence of the 'long-term criminal conduct' that RICO is intended to redress." *CSX Transp., Inc. v. Meserole Street Recycling, Inc.*, 570 F. Supp.2d 966, 971 (W.D. Mich. 2008) (citing cases and dismissing RICO claim where plaintiff alleged a scheme targeting four victims over a period of 6 and 14 months).

While plaintiffs argue that their allegations include all the requisite language from the RICO statute, this formulaic recitation of elements fails to raise the factual allegations to the level of plausibility required by *Twombly*. *Twombly*, 550 U.S. at 555.

Plaintiffs further assert they have pleaded an open-ended RICO claim for purposes of establishing the necessary continuity element. *See* Doc. 115 at 27-30. In support, plaintiffs cite to their allegation that the racketeering acts committed by defendants constitute a pattern of racketeering activity because they are "continuous and that they are capable of being continued into the future and pose that threat of continuing for a lengthy time." (Doc. 115 at 27) (quoting Doc. 87, ¶ 981). Plaintiffs maintain that this allegation when viewed in the context of other allegations regarding the Sheakley Defendants' corporate culture sufficiently alleges an open-ended continuous threat of racketeering activity on behalf of defendants. (*Id.* at 27-30). Plaintiffs maintain that defendants' scheme to defraud them "constitutes the methodology of their regular way of doing business" as evidenced by defendant Strunk-Zwick's history of committing fraud and embezzling funds from employers and the Sheakley Defendants' "ends justify the means" management style. (*Id.* at 29-30). Plaintiffs further maintain that at the time defendants engaged in the alleged predicate acts, there was no indication that their scheme to defraud plaintiffs would not extend into the future and, accordingly, their RICO claims should stand because they have alleged facts sufficient to establish an open-ended pattern of racketeering activity. The Court disagrees.

"The threat of continued criminal activity is a fact specific concept. It may be established by any number of possibilities, such as by showing that . . . the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *U.S. v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) (citing *H.J. Inc.*, 492 U.S. at 242). In determining whether allegations establish an

open-ended continuity for purposes of stating a RICO claim, the Court should consider the totality of the circumstances to assess whether the predicate acts alleged pose a threat of ongoing criminal activity. *Id.* (citing *U.S. v. Kaplan*, 886 F.2d 536, 542-43 (2d Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990)). "The lack of a threat of continuity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict. . . . the threat of continuity must be viewed at the time the racketeering activity occurred." *Id.*

Considering the totality of the circumstances as alleged by plaintiffs, the undersigned finds that the substituted first amended complaint describes a single and inherently terminable scheme. The alleged scheme concocted by defendant Strunk-Zwick was to convert the assets of Capital Concepts' wholly owned subsidiary, Tri-Serve, for her own use and transfer or convey these assets to the Entity Sheakley Defendants. (Doc. 87, ¶ 967). Plaintiffs' supporting allegations relate to conduct beginning in March 2009, when defendant Strunk-Zwick allegedly communicated with Bryan Bundy, a Sheakley employee, her willingness to provide human resources assistance to Sheakley HR Solutions, and ending in August 2009, when defendant Strunk-Zwick allegedly falsely told plaintiff Linda Grubbs that she was not in possession of Tri-Serve's tax return documentation. *See id.*, ¶¶ 964(a)-(bt). *See also id.*, ¶¶ 968-78 (plaintiffs' allegations related to the other individual defendants describes conduct occurring within this time period).[9] These allegations describe an inherently short term, single scheme with the end goal being defendants' acquisition of plaintiffs' clients, property, and other assets. Aside from their vague assertions that the Sheakley Defendants foster a corporate culture wherein the "ends justify the means" (Doc. 115 at 30), plaintiffs' sole and conclusory allegation that the racketeering acts allegedly committed by defendants pose a threat of future harm is insufficient

---

[9]The only allegation relating to conduct occurring outside of this time period relates to a February 2009 email sent by defendant Bundy to defendant Strunk-Zwick regarding her willingness to assist Sheakley HR Solutions. *See* Doc. 87, ¶ 972(a).

to state a plausible RICO claim under a theory of open-ended continuity where the overwhelming balance of plaintiffs allegations describe a single scheme carried out over a discrete period of time with an absolute end goal.  The alleged predicate acts of wire fraud occurred within a discrete period of time and were committed by defendants with the purpose of converting plaintiffs' property.  *See* Doc. 87, ¶ 967.  These predicate acts were necessarily completed upon defendants' alleged successful conversion of plaintiffs' property.  Accordingly, the substituted first amended complaint alleges a terminable scheme and, thus, fails to establish open-ended continuity.  *See Derby City Capital, LLC v. Trinity HR Srvs.*, 949 F. Supp.2d 712, 740 (W.D. Ky. 2013).  *See also Vemco, Inc.*, 23 F.3d at 135 (finding no open-ended continuity where the complaint alleged a single scheme and victim); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725-26 (6th Cir. 2006) (affirming dismissal of RICO claim where the alleged predicate acts were aimed at the defendants' single objective of depriving plaintiff of his property).

Plaintiffs argue that because there was no indication at the time defendants committed the alleged predicate acts of wire and mail fraud in July 2009 that they would not continue this behavior in the future, they have sufficiently alleged a pattern of racketeering activity.  (Doc. 115 at 30).  In support, plaintiffs rely on *Busacca* where the Sixth Circuit held that six instances of fraud committed over a period of two and one half months sufficed to state a RICO claim where, at the time the fraud was committed, there was a threat of continuity which sufficed to state a valid RICO claim under an open-ended continuity theory.  *Busacca*, 936 F.2d at 237-38. *Busacca* is distinguishable from the instant matter for several notable reasons.  The RICO claim in *Busacca* was brought by the federal government against the defendant, Busacca, the president of a Union.  *Id.* at 234.  Busacca used his authority over the union's benefits funds to pay for his own criminal defense costs without approval from the trustees, in connection with embezzlement

charges from the union and those very plans. *Id*. at 234-36. The embezzlement ended when

Busacca was convicted of the underlying charges and removed from his position of authority

over the benefits plan. *Id*. The Sixth Circuit held that, as of the time the predicate acts were

occurring, the "manner in which the embezzlements occurred was capable of repetition

indefinitely into the future, as long as there were either legal fees or other expenses which

Busacca wanted paid." *Id*. at 238. Unlike *Busacca*, where the predicate acts and scheme at issue

were terminated by the "fortuitous interruption" of Busacca's criminal conviction, the

embezzlement scheme alleged by plaintiffs began and ended with defendant Strunk-Zwick's

employment with plaintiffs. Plaintiffs own allegations establish that there was no threat of

ongoing embezzlement as plaintiffs engaged in a course of action to ensure that defendant

Strunk-Zwick no longer had access to their assets. *See*, *e.g.*, Doc. 87, ¶¶ 424, 446, 452, 455

(plaintiffs allege that after July 6, 2009, plaintiff Linda Grubbs ensured that defendant Strunk-

Zwick's name was removed from plaintiffs' accounts and that she no longer had access to

Capital Concepts or Tri-Serve's premises and clients). Accordingly, viewing as a whole the

allegations of the substituted first amended complaint, the undersigned finds that *Busacca* is

distinguishable and does not control resolution of the instant pattern of racketeering issue.

In sum, although plaintiffs allege in a conclusory fashion that the racketeering activity

posed a threat of continuing for a long time, *see* Doc. 87, ¶ 981, the substituted first amended

complaint does not include the requisite supporting allegations to state a plausible open-ended

continuity RICO claim. Plaintiffs do not allege that defendants pose a future threat or that there

were any other victims of the alleged racketeering operation. While plaintiffs argue that

defendants *could* pose an ongoing threat by virtue of their "corporate culture," the allegations of

the substituted first amended complaint, viewed in the light most favorable to plaintiffs, simply

do not support this conclusion.  The alleged predicate acts committed by defendants occurred within a short period of time and concluded when defendant Strunk-Zwick and the Sheakley Defendants allegedly converted plaintiffs assets, which was the purpose of the alleged scheme. Given the lack of plausible factual allegations establishing a "further risk of racketeering activity, an open-ended pattern does not exist." *Intergo, LLC v. Switzerland & Am. Trust, LLC*, No. 3:10-cv-2519, 2012 WL 671415, at *3 (N.D. Ohio Feb. 29, 2012) (citing *Moon*, 465 F.3d at 727). Thus, plaintiffs have not alleged facts sufficient to plead a pattern of racketeering activity for their RICO claim.

Plaintiffs' failure to allege facts sufficient to satisfy the continuity element of a pattern of racketeering is fatal to their RICO claims.  *See Griffin v. NBD Bank*, 43 F. Supp.2d 780, 793 (W.D. Mich. 1999) (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992)) (holding that plaintiffs' failure to allege a pattern of racketeering supporting their § 1962(c) RICO claim required dismissal of their ancillary § 1962(d) RICO claim).  Because dismissal of plaintiffs' RICO claims is warranted for this reason alone, the Court declines to address the additional arguments for dismissal raised by defendants.

The undersigned therefore recommends that plaintiffs' RICO claims, Counts XIV and XV of plaintiffs' substituted first amended complaint, be dismissed.

C. The State Law Claims

Given the undersigned's finding that plaintiffs have failed to state a legally cognizable federal claim, it is not necessary to address the merits of plaintiffs' state law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original federal jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 546 (6th Cir. 1999).

Moreover, the Sixth Circuit has recognized a general rule disfavoring a district court's exercise of supplemental jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)). *See also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are all dismissed before trial, the state claims generally should be dismissed as well.") (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). Therefore, if the District Judge adopts the undersigned's recommendation to dismiss plaintiffs' federal claims, then it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiffs' state law claims and dismiss these claims without prejudice.[10]

**IV. Conclusion**

For the above reasons, **IT IS RECOMMENDED** that defendants' motions to dismiss plaintiffs' federal Lanham Act and RICO claims, Counts IV, V, XIV, and XV of the substituted first amended complaint (Docs. 100 and 109) be **GRANTED** and that plaintiffs' state law claims be dismissed without prejudice.

Date: 11/17/2014

Karen L. Litkovitz
United States Magistrate Judge

---

[10]To the extent the substituted first amended complaint invokes the diversity jurisdiction of the Court under 28 U.S.C. § 1332 (Doc. 87 at 9), the complaint reveals such jurisdiction is lacking. The citizenship of plaintiffs is not "diverse from the citizenship of each defendant" and therefore there is not "complete diversity." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *State Farm Fire & Cas. Co. v. Tashire*, 387 U.S. 523, 531 (1967)). *See also Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967); *Winningham v. North American Res. Corp.*, 809 F. Supp. 546, 551 (S.D. Ohio 1992).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LINDA GRUBBS, *et al.*,                              Case No. 1:13-cv-246
      Plaintiffs,

                                                       Dlott, J.
v.                                                  Litkovitz, M.J.

SHEAKLEY GROUP, INC., *et al.*,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Angelia Strunk-Zwick
4164 Leona Ct
Hamilton, OH 45013

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☑ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7011 3500 0001 5345 6236

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540